IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TROY G.,

        Plaintiff,
v.                                        Civil Action No.
                                               3:23-cv-488 (DEP)

MARTIN J. O'MALLEY,
Commissioner of Social Security
Administration,[1]

        Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

---

[1] Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on May 22, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*/s/ David E. Peebles*
David E. Peebles
U.S. Magistrate Judge

Dated: May 29, 2024
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TROY G.,
                                            Plaintiff,

-v-                                         3:23-CV-488

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.
------------------------------------------------------------x
```

### DECISION TRANSCRIPT
### BEFORE THE HONORABLE DAVID E. PEEBLES
May 22, 2024
100 South Clinton Street, Syracuse, NY 13261

For the Plaintiff:

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY:  **PETER A. GORTON, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    6401 Security Boulevard
    Baltimore, Maryland 21235
    BY:  **GEOFFREY M. PETERS, ESQ.**

*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present by telephone.
2  Time noted:  2:20 p.m.)
3          THE COURT:  Let me begin by thanking counsel for
4  excellent presentations.  You've presented me with some
5  fascinating arguments, Attorney Gorton.
6          At the outset, let me address the issue of consent.
7  When this case was filed, it was assigned to Magistrate Judge
8  Hummel.  The consent form that was signed on May 10, 2023, by
9  you, Attorney Gorton, consented to Magistrate Judge Hummel.
10 Sorry to put you on the spot, but do you consent -- it was
11 transferred to me by our chief judge.
12         MR. GORTON:  Yes.
13         THE COURT:  Do you consent to my jurisdiction?
14         MR. GORTON:  Yes.  Win or lose, I consent.  I have no
15 clue what's going to happen, but, yes, we consent.
16         THE COURT:  Well, you've never hesitated to take an
17 appeal to the Second Circuit on the rare case when you thought I
18 was wrong.
19         All right.  So I have before me a challenge to an
20 adverse Commissioner's determination finding that the plaintiff
21 was not disabled at the relevant times and therefore ineligible
22 for the disability insurance benefits sought.  It is brought
23 pursuant to 42, United States Code, Section 405(g).
24         The background is as follows:  Plaintiff was born in
25 December of 1968.  He is currently 55 years old.  He was

1   51 years of age at the alleged onset of disability on
2   September 5, 2020.  He stands 5'3" in height and weighs
3   approximately 144 pounds.  He lives in a house in Binghamton
4   with two aunts, one uncle, and some pets.  Plaintiff achieved a
5   GED and, while in school, attended regular classes.  Plaintiff
6   has a driver's license and does drive.
7           Plaintiff stopped working in September of 2020.
8   Prior to stopping, he worked in various positions, including,
9   for a lengthy period of time, in a warehouse as both a
10  dispatcher and a forklift operator.  He held various temporary
11  jobs at some point on a short-term basis, including as a
12  dishwasher and prep cook.  He did hospital housekeeping for
13  approximately one year and most recently, before stopping work,
14  worked in a warehouse processing facility for Dick's Sporting
15  Goods.
16          Physically, plaintiff has a history of heart issues,
17  as well as mild lumbar degenerative disc disease, diabetes,
18  sleep apnea for which he uses a CPAP machine, some arthritis in
19  his knees, and high cholesterol.  The heart issues include from
20  time to time going into atrial fibrillation, or AFib.  He also
21  sustained a myocardial infarction with left moderate anterior
22  descending artery occlusion in April of 2019 resulting in
23  catheterization.  In May of 2020, he experienced a non-ST
24  elevation myocardial infarction resulting in catheterization and
25  he's had multiple hospital visits with AFib events.  Plaintiff's

1   primary care provider is Nurse Practitioner Ryan Little who is
2   with United Health Services Primary Care where plaintiff has
3   treated since approximately 2005.
4           In terms of activities of daily living, plaintiff is
5   able to clean, cook, shop, groom himself, drive, care for his
6   pets.  He reported on May 25, 2021, at page 528, walking between
7   one and four miles at a time and riding a bicycle several miles
8   per week.  In that report, he stated that he walks four miles
9   several times a week.
10          The procedural history is as follows:  Plaintiff
11  protectively filed a Title II application for benefits on
12  October 2, 2020, alleging an onset date of September 5, 2020.
13  At page 242, he alleged disability based on Type II diabetes,
14  two prior heart attacks, AFib conditions, sleep apnea, arthritis
15  in his knees and back, high cholesterol, hypertension, and
16  potential gallbladder problem.
17          A hearing was conducted by Administrative Law Judge
18  Kenneth Theurer after his claim was denied at the initial entry
19  level.  The hearing was conducted on August 6, 2021, by ALJ
20  Theurer who then subsequently issued an adverse decision on
21  August 16, 2021.  The Social Security Administration Appeals
22  Council denied plaintiff's application for review on
23  February 28, 2023.  This action was commenced on April 20, 2023,
24  and is timely.
25          In his decision, ALJ Theurer applied the familiar

1   five-step sequential test for determining disability.  He first
2   noted that plaintiff is insured for benefits through
3   December 31, 2025.  He found that plaintiff had not engaged in
4   substantial gainful activity since September 5, 2020, although
5   he did note some earnings reflected in 2020 and 2021.
6           At step two, ALJ Theurer concluded that plaintiff
7   does suffer from impairments that impose more than minimal
8   limitations on his ability to perform basic work activities,
9   including recurrent arrhythmia, history of myocardial
10  infarction, and mild degenerative disc disease of the lumbar
11  spine.
12          At step three, ALJ Theurer concluded that plaintiff's
13  conditions do not meet or medically equal any of the listed
14  presumptively disabling conditions set forth in the
15  Commissioner's regulations, specifically considering listings
16  1.15 and 4.05.
17          The Administrative Law Judge then concluded based on
18  the entire record that plaintiff retains the residual functional
19  capacity, or RFC, to perform light work as defined in the
20  regulations, except he can never climb ladders, ropes, or
21  scaffolds, and he can only occasionally balance, stoop, kneel,
22  crouch, crawl, and climb ramps and stairs.
23          Applying that RFC at step four, ALJ Theurer concluded
24  that plaintiff is unable to perform his past relevant work as a
25  housekeeper, forklift operator, and a composite job of

1   dispatcher and warehouse worker.
2           At step five, the Administrative Law Judge, noting
3   that the burden at that step rests with the Commissioner,
4   concluded that plaintiff is capable, notwithstanding his
5   limitations, of performing work as a marker, assembler and an
6   electronics assembler based on the testimony of a vocational
7   expert.
8           As you know, the Court's function at this juncture is
9   extremely limited.  The standard to be applied is very
10  deferential.  I must determine whether correct legal principles
11  were applied and the resulting determination is supported by
12  substantial evidence defined as such admissible evidence as a
13  reasonable mind would find sufficient to support a conclusion.
14          The Second Circuit Court of Appeals has noted,
15  including in *Brault v. Social Security Administration*
16  *Commissioner*, 683 F.3d 443, that the standard is extremely
17  deferential.  It is even more rigorous than the clearly
18  erroneous standard.  The Second Circuit has more recently
19  reiterated this in *Schillo v. Kijakazi*, 31 F.4th 64, from April
20  of 2022.
21          The plaintiff has raised several contentions in
22  support of his challenge.  I've broken them out as, number one,
23  the evidence does not support the light work RFC since it is
24  based, in plaintiff's view, on the ALJ's interpretation of
25  medical data in the face of what the plaintiff characterizes as

1   uncontested medical opinion of plaintiff's Nurse Practitioner;
2   two, the plaintiff complains of the improper rejection of the
3   medical source statements and opinions of Nurse Practitioner
4   Little; three, the Administrative Law Judge, according to the
5   plaintiff, improperly relied on, at and beyond step two, the
6   prior administrative medical findings, or PAMFs, of state
7   consultants; and four, because the hypothetical on which the
8   vocational expert's testimony was based tracked a flawed RFC,
9   the Commissioner failed to carry his burden at step five.
10          The backdrop, of course, is that it's well
11  established now that the plaintiff bears the burden of proof
12  through step four, including at the residual functional capacity
13  stage, whereas the burden shifts to the Commissioner at step
14  five to show that there is available work in the national
15  economy in sufficient numbers that plaintiff is capable of
16  performing.
17          Let me address the PAMFs issue first.  It's a very
18  interesting argument that was raised and I found it fascinating
19  trying to wade through it.  There are two PAMFs in the record,
20  one from Dr. K. Gallagher, December 16, 2020, at pages 70
21  through 77 of the Administrative Transcript, and the second from
22  Dr. M. Kirsch, from March 4, 2021, pages 79 through 87 of the
23  Administrative Transcript.
24          In neither case were those two physicians the
25  examining adjudicator.  In both, they found at pages 85 and 75

1  that the plaintiff does suffer from medically determinable

2  impairments, but they are not severe.

3           The step two test, of course, is very modest.  An

4  impairment fails to reach the threshold of severity, which is

5  what these doctors have found, where it does not significantly

6  limit a plaintiff's physical or mental ability to do basic work

7  activities, 20 C.F.R. Section 404.1522.  And as I indicated

8  during the oral argument, one of the two consultative

9  non-examiners, Dr. Kirsch, specifically stated at page 85, "not

10 severe - impairment or combination of impairments does not

11 significantly limit physical or mental ability to do basic work

12 activities."  That is a quote from Dr. Kirsch's opinion.

13          There doesn't seem to be any controversy that the

14 PAMFs in this case, Dr. Kirsch and Dr. Gallagher's opinions are,

15 in fact, PAMFs, 20 C.F.R. Section 416.913a(5), which defines a

16 prior administrative medical finding as, "a prior administrative

17 medical finding is a finding, other than the ultimate

18 determination about whether you are disabled, about a medical

19 issue made by our Federal and State agency medical and

20 psychological consultants at a prior level of review in your

21 current claim based on their review of the evidence in your case

22 record."

23          The plaintiff has raised, I thought, an interesting

24 argument arguing that the Administrative Law Judge is not

25 permitted to rely on such a PAMF.  And I admit that there could

1  be, at first blush, ambiguity.  20 C.F.R. Section 416.920b(c)(2)
2  would seemingly suggest that statements about whether or not a
3  claimant has a severe impairment is inherently neither valuable,
4  nor persuasive.  However, when you -- and that certainly gives
5  room for pause, but 20 C.F.R. Section 416.913a, which addresses
6  evidence from Federal or State agency medical psychological
7  consultants, suggests that the existence and severity of
8  impairments about medical issues are properly addressed by a
9  State agency medical or psychological consultant.  And
10 subsection (b)(1) of that provision states, "Administrative Law
11 Judges are not required to adopt any prior administrative
12 medical findings, but they must consider this evidence according
13 to Sections 416.920b, 416.920c, and 416.927, as appropriate,
14 because our Federal or State agency medical or psychological
15 consultants are highly qualified and experts in Social Security
16 Disability evaluation."
17          This is reiterated in a now rescinded Social Security
18 ruling, but, nonetheless, I took it into account, SSR 96-6p,
19 which suggests similarly that Administrative Law Judges are
20 required to consider the findings of fact about the nature and
21 severity of an individual's impairment as opinions of
22 non-examining physicians and psychologists.  It's interesting
23 because that was allegedly replaced by SSR 17-2p, which actually
24 doesn't speak to step two, but does speak to step three, but,
25 nonetheless, I think it applies by analogy the new medical

1   regulations embodied in 20 C.F.R. Section 404.1520c, and which
2   apply in the case, also addresses consideration of prior
3   administrative medical findings.
4           As both sides have pointed out, this issue was
5   exhaustively addressed by one of my fellow magistrate judges to
6   whom, ironically, this case was originally assigned, Magistrate
7   Judge Christian Hummel, in *Loni S. v. Commissioner of Social*
8   *Security*, 2023 WL 4195887.  It was dated June 27, 2023.
9   Ultimately, Judge Hummel analyzed both the regulations and the
10  Program Operations Manual System, or POMS, of the Commissioner
11  and found that they both suggest that PAMFs, including opinions
12  regarding the severity of an impairment, are properly
13  considered, and one of the reasons is that the consultants are
14  defined as part of the -- they're actually the Commissioner's
15  agents and they're part of the adjudicative team, so the
16  prohibition on considering whether an impairment is severe
17  speaks to a matter reserved to the Commissioner doesn't apply to
18  those consultants.  The cases make it clear that state agency
19  consultants are highly qualified experts in disability
20  evaluation and although they are non-examining typically, their
21  opinions are still entitled to strong consideration.  The case
22  law still supports that, as well as 20 C.F.R. Section
23  416.913a(b)(1).
24          So a PAMF like those in this case do not bind the
25  Administrative Law Judge, but should be considered.  And, of

1   course, it is proper, in fact, to rely on such a PAMF, *Michael*
2   *K. v. Commissioner of Social Security*, 2022 WL 3346930 from the
3   Second Circuit, Western District of New York, August 12, 2022.
4   So I don't find any error in reliance upon the prior
5   administrative findings in part to support the RFC, which leads
6   me to the second argument, residual functional capacity.
7            An RFC represents a range of tasks a claimant is
8   capable of performing notwithstanding his or her impairments and
9   that represents, in turn, a claimant's maximum ability to
10  perform sustained work activities in an ordinary setting on a
11  regular and continuing basis, meaning eight hours a day for five
12  days a week, or an equivalent schedule.  And, of course, an RFC
13  determination is informed by consideration of all the evidence
14  of record, including medical evidence.
15           The ALJ in this case concluded that plaintiff is
16  capable of performing light work with some modifications.  Light
17  work is defined in 20 C.F.R. Section 404.1567(b) as involving
18  lifting no more than 20 pounds at a time with frequent lifting
19  or carrying of objects weighing up to 10 pounds.  It requires a
20  good deal of walking or standing, or when it involves sitting
21  most of the time with some pushing and pulling of arm or leg
22  controls.
23           The RFC in this case is based on the prior
24  administrative medical findings and plaintiff's testimony.  It
25  is clearly more limited than the prior administrative medical

1   findings, but it is proper to rely on PAMFs of non-examining

2   state consultants, *Lisa C. v. Kijakazi*, 2022 WL 2105853 from the

3   Northern District of New York, June 10, 2022.

4           I found this case, as the Commissioner has argued, to

5   be extremely similar to *Ryan W. v. Commissioner of Social*

6   *Security*, 2022 WL 813934 from the Northern District of New York,

7   March 17, 2022, from Magistrate Judge Daniel Stewart.  Similar

8   to this case, in that instance, the PAMFs found no limitations,

9   the RFC was a light work RFC, and the Administrative Law Judge

10  found more restrictions based on plaintiff's testimony.

11  Magistrate Judge Stewart found no error in that respect.

12          In this case, as I indicated, PAMFs found no

13  limitation in the ability of perform basic work functions.  The

14  Administrative Law Judge concluded that based on plaintiff's

15  subjective testimony, he, in fact, experienced greater

16  limitations.  That does not error constituting remand, *Ivey v.*

17  *Commissioner of Social Security*, 2020 WL 5046261, Western

18  District of New York, August 27, 2020.

19          In this case, the RFC and the reason for adopting the

20  RFC were explained by the Administrative Law Judge at pages 15

21  to 17 of his decision.  It was based on the prior administrative

22  medical findings, plaintiff's extensive ADLs, activities of

23  daily living, and the fact that he is physically active, walking

24  four miles several times per week and biking long distances, as

25  well as based on imaging which showed only mild degenerative

1   disc disease of the lumbar spine and changes, normal cardio
2   exams, and I reviewed carefully the medical records and found
3   that normal cardio findings and reports were recorded on
4   multiple occasions, 563, 388, 400, 415, 422, 429, 440, 448, 456,
5   464, 471, 481, and 487, among others.
6           There's negative stress test results from August 2019
7   and February 2021, plaintiff's denial of cardio and back
8   symptoms and shortness of breath on several occasions, and
9   physical exams without significant cardiac findings, so I find
10  that the residual functional capacity determination is supported
11  by substantial evidence.
12          In terms of evaluation of the medical opinions, as
13  the Commissioner has pointed out, this case, the application of
14  which was filed after March 27, 2017, is subject to the amended
15  regulations set forth in 20 C.F.R. Section -- I can't put my
16  hands on it.  I gave you the cite earlier.  And under those
17  regulations, the Commissioner no longer gives deference or
18  specific evidentiary weight, including controlling weight, to
19  any medical opinions.  Instead, the ALJ must articulate and
20  explain how he or she considered the factors of supportability
21  and consistency and must consider various other factors which
22  are not required to be elaborated.
23          In this case, the opinions include the prior
24  administrative findings at (1)(a) and (2)(a), which we've
25  already discussed.  The Administrative Law Judge found them to

1  be somewhat persuasive and explained at 15 to 16 why that is.

2  He then went on to address Nurse Practitioner Little's opinions,

3  and there were two.  One is from December 14, 2020.  It appears

4  at 508.  It merely states Nurse Practitioner Little's diagnosis

5  and then goes on to say, quote, "I have recommended he not

6  return to work as his medical condition is very complicated and

7  work related stress has caused deterioration to his overall

8  health."  The opinion does not speak to any particular

9  functions.  The Administrative Law Judge determined that it was

10 less persuasive and discussed the reasons for that at pages 16

11 and 17 of the Administrative Transcript.

12         It's not a particularly useful opinion and it speaks

13 to an issue that is specifically reserved to the Commissioner,

14 20 C.F.R. Section 404.1520b(c)(3)(i), which states that we will

15 not provide any analysis about how we considered such evidence

16 in our determination.  Evidence that is inherently neither

17 valuable, nor persuasive, includes statements on issues reserved

18 to the Commissioner and statements that you are not disabled,

19 blind, able to work, or able to perform regular or continuing

20 work.  In any event, I find no error in the analysis of that

21 opinion.

22         The second opinion from Nurse Practitioner Little

23 appears at pages 518 through 520 of the Administrative

24 Transcript.  Undeniably, it is work preclusive.  For example, it

25 finds that the plaintiff would be off task between 20 and

1   33 percent of the day and absent more than four days per month.

2   It also includes a two-hour limitation on standing and walking

3   in an eight-hour workday and it includes a limitation on lifting

4   that is inconsistent with light work.

5            The Administrative Law Judge addressed this opinion,

6   as well, and found it less persuasive.  This is at page 17.  I

7   thought the explanation could have been more fulsome, but when I

8   read the Administrative Law Judge's decision as a whole, I don't

9   find any error in evaluating this.  Pursuant to the new

10  regulations, one of the bases for rejecting it is the

11  Administrative Law Judge's observation that there's no support

12  given and cited for the opinions.  And I recognize -- I'm

13  painfully familiar with the *Colgan* decision, but, nonetheless,

14  it is a proper consideration that a medical opinion is

15  conclusory and not supported by a reference to such things as

16  observations during exams, test results, and so forth, *Sandra M.*

17  *v. Commissioner of Social Security*, 2023 WL 4972707 from the

18  Northern District of New York, August 3, 2023.  And I note that

19  it is not uncontested, as the plaintiff argues, that it is

20  inconsistent with, in fact, the two prior administrative medical

21  findings.

22           In conclusion, in reading the decision as a whole,

23  again, I find no error in the evaluation of Nurse Practitioner

24  Little's opinions.  At step five, the argument is premised and

25  hinges on a finding that the hypothetical and RFC are not

1  supported, an argument that I rejected.  I find that the
2  Commissioner has carried his burden at step five.
3           So in sum, I will award judgment on the pleadings to
4  the defendant, order dismissal of plaintiff's complaint, and the
5  entry of judgment to that effect.
6           Thank you so much for your arguments and presenting
7  this case.  It was interesting.  I hope you have a good day.
8           MR. GORTON:  Thank you, your Honor.
9           MR. PETERS:  Thank you, your Honor.
10          (Time noted:  2:52 p.m.)

```
 1
 2
 3
 4                CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7           I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17             Dated this 28th day of May, 2024.
18
19             s/ Hannah F. Cavanaugh_____
20             HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21             Official U.S. Court Reporter
22
23
24
25
```